## Case No. 13,685.

### SWEENEY et al. v. CLOUTMAN.

[2 Cliff. 85.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1862.

SEAMEN—WAGES—ORAL AGREEMENT—SUBSEQUENT WRITTEN AGREEMENT—SHARES—FISHING VOYAGE.

Certain mariners contracted orally with the master of a fishing-vessel to serve as fishermen during a specified time, and for a certain rate of wages in money, and, in pursuance thereof, went on board the vessel. Some days afterward, and while she was fitting for the voyage, at the master's request the men signed certain articles which, among other things, contained a "shares" clause, but without reading the articles or being informed of the purport thereof. *Held*, that the mariners were entitled to recover wages in conformity with the oral agreement, and that such oral agreement was not merged in the subsequent written one.

[Appeal from the district court of the United States for the district of Massachusetts.]

Admiralty appeal in a cause of subtraction of seamen's wages. The libellants [Michael Sweeney and others] were seamen belonging to the schooner John G. Cowell, and were employed during the season of 1860 on a codfishing voyage from Marblehead to the Grand Banks. The master's name was Thomas Hanrahan, and the respondent [John Cloutman] was the owner of the vessel. It was set forth in the libel, which was filed on the 9th of December, 1861, that the libellants shipped in Boston, on the 28th of April, 1860, to serve as mariners and fishermen on board the schooner for that fishing season. According to the libel, the first two of the libellants—there were three in all—were to receive $140 each as wages for the season, and the other $100 for the same voyage. Accordingly, they alleged, they entered upon the voyage, performed the contract, and returned to Marblehead with the vessel, October 6, 1860, when and where the voyage ended. Having set forth the contract and their performance of the same, they alleged that on their arrival at the home port, they were duly discharged, and became entitled to their wages, but that the respondent refused to pay them. Ownership of the vessel by the respondent was admitted in the answer, as well as the engagement of the vessel in a fishing voyage during the season of 1860, but it was averred that the respond-

ent himself did not hire any of the libellants to serve on board the schooner, at any rate whatever, and that no one of them served thereon in pursuance of any contract for wages in that voyage. It was, however, in effect admitted that the libellants shipped on board the vessel, and also that they performed service on board as mariners and fishermen; but the respondent averred that they entered into a written agreement with the master and the rest of the crew, as required by the act of congress, to serve for shares of the fish to be caught, and that the whole service performed by them during the voyage was under that agreement, and that no other agreement was made by him with them, or by any person authorized to act for him. A special replication to so much of the answer as set up the written agreement to serve for shares of the catch was filed by the libellants. First, they denied that they ever entered into any written agreement upon the subject either with the master or the respondent, but averred that the only contract they made was an oral one to serve during the fishing season for the wages specified in the libel. Second, they alleged that the written agreement, if any such was signed by them, was invalid, because they were fraudulently induced to sign the same without knowing the contents, or suspecting it was of a character to affect their contract for wages.

The decree in the district court was in favor of the libellants for their wages, under the oral contract set forth in the libel. [Case unreported.]

So far as that decree related to two of the libellants, an appeal was taken, and afterwards both sides took additional testimony by which it appeared that the master took charge of the vessel upon the condition that he should be permitted to hire the crew for the voyage, and his testimony contained the declaration that he employed the libellants and agreed to allow them the wages set forth in the libel. They were actually on board the vessel seven or eight days, during the period she was fitting for the voyage. When the men arrived at Marblehead, the respondent requested to see them, and on their being pointed out to him, he complained because the master had not procured more able-bodied men, and said he hoped he had not agreed to give them too much money.

C. G. Thomas, for libellants.

As to implied authority of the master to hire the men when no direction is given, see Baker v. Corey, 19 Pick. 496; Curt. Merch. Seam. pp. 15–18, §§ 3172, 3336.

R. T. Paine, Jr., for respondent.

The skipper of a fishing-vessel has no implied authority to hire fishermen on wages. 3 Stat. 2; Baker v. Corey, 19 Pick. 498. The evidence is positive, uncontradicted, and admitted by libellants that after their parol

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

bargain for wages, these two libellants signed the written fishing-agreement, to go on shares. This merged the previous parol bargain. The libellants can only escape from this written agreement by proving fraud. The burden of proof is on them, the libellants, to prove the six elements of fraud which would be a valid defence to the writing, namely: 1. False and fraudulent representations. 2. By respondent. 3. To libellants. 4. As to contents and purpose of the writing. 5. To induce them to sign it. 6. That they were thereby induced. There was no unusual clause in this agreement. An unusual clause in a shipping-paper must be read to the seamen. Heard v. Rogers [Case No. 6,298]. The shares clause is the only important one in this case, and being prescribed by 3 Stat. 2, every man is presumed to know the law.

CLIFFORD, Circuit Justice. Taken as a whole, the testimony shows that the libellants were shipped by the master, and that he contracted to give them respectively the wages specified in the libel, and that the oral contract was never modified or varied in any respect whatever. Express authority to hire the crew upon wages was fully proved by the master, and the circumstances attending their employment, and the conduct and declarations of the respondent on their arrival at Marblehead, were of a character to satisfy the court that the master's account of the transaction is correct, without adverting to the subsequent conduct of the respondent, which in many respects goes very far to confirm that view of the case. The proof of express authority having been exhibited, it is unnecessary to consider the second proposition submitted by the respondent, which was that the master had no implied authority to make such a contract. But it is insisted by the respondent that the oral contract of the libellants, if made as alleged, was merged in a subsequent written contract, wherein the libellants agreed to serve during the fishing season for shares of the fish to be caught, in the proportions specified in the written agreement. That proposition is based upon the fact that the libellants at the request of the master signed such an agreement three or four days before the schooner departed on her voyage. She sailed on the 25th of April, 1861, which was some seven or eight days after the libellants had arrived at Marblehead, and entered upon the performance of the oral contract under which they agreed to ship for the voyage. Three or four days before the vessel sailed, the master, as he stated, told the crew, including the libellants, that he wanted them to sign the fishing-agreement or paper which he exhibited to them, and he and every one of the crew signed it. Recurring to the paper, it will be seen that it corresponds in all respects with the form of the fishing-agreement usually adopted where

the master and crew are shipped to serve for shares of the fish caught during the season or voyage; but the instrument was never read to them, and the facts and circumstances show to the entire satisfaction of the court that the paper was never executed and delivered as an agreement to determine and control the wages either of the master or the crew. Circumstances strongly indicate that it was executed in connection with some purpose, contingent or otherwise. to perpetrate a fraud upon the government, but the evidence fails to disclose any grounds to conclude that the libellants or any of the crew were parties to any such fraudulent purpose. They appear to have acted heedlessly in signing the paper, but without any knowledge of its contents, and without the slightest suspicion that it had any relation to their contract. They made no inquiries in regard to the paper, and no explanations were given, and the whole case shows that the paper was not executed or intended by either party as one to show the terms of the contract of shipment, and was never delivered as such by the libellants, or received as such by the respondent. To hold otherwise would be to sanction a fraud upon the libellants, and to impute a fraudulent purpose to the respondent not warranted by any evidence in the case. He well knew that the libellants had been shipped upon wages, and he also knew that they so understood the contract, and there is no just ground to believe that he caused the paper to be signed with any view to discharge or modify the contract.

The decree of the district court is therefore affirmed with costs.